IN THE UNITED STATES DISTRACT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. SCHWEITZER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 08-478 |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CONTI**, District Judge.

## I.    Introduction

In this memorandum opinion, the court considers the motion for summary

judgment (the "Motion") (Docket No. 84) filed by defendant Equifax Information

Services LLC[1] ("Equifax" or "defendant") with respect to all federal and state claims

asserted by plaintiff William A. Schweitzer, Jr., ("Mr. Schweitzer" or "plaintiff") as

assignee of the claims of  Linda O. Schweitzer ("Mrs. Schweitzer"),[2] against defendant[3]

---

[1]    Defendant notes that its name was incorrectly identified in plaintiff's complaint as "Equifax Information Solutions LLC" and should be corrected to "Equifax Information Services LLC".

[2]    Mrs. Schweitzer was named in the original complaint as a plaintiff but assigned all her claims to her husband, Mr. Schweitzer.  Due to the assignment, Mr. Schweitzer is the plaintiff with respect to the claims originally asserted by Mrs. Schweitzer.  A reference to plaintiff herein is a reference to Mr. Schweitzer as the assignee of Mrs. Schweitzer's claims.  Equifax filed a separate motion for summary judgment (Docket No. 88) to dismiss the claims of Mr. Schweitzer, which the court will address in a separate memorandum opinion.

[3]    The complaint originally named two additional defendants, Fair Isaac Corporation and Vantagescore Solutions LLC, who were dismissed from this action on July 14, 2008.  (See Docket Entry, July 14, 2008.)

in the complaint.[4]  (Docket No. 1-2.)  Plaintiff's federal claims consist of five alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681 et seq., including: 1) count I – failure to follow reasonable procedures to maintain accuracy, 15 U.S.C. §1681e; 2) count II – failure to reinvestigate on consumer request, 15 U.S.C. §1681i(a); 3) count III – failure to delete information found to be inaccurate, incomplete or unverified, 15 U.S.C. §1681i(a)(5)(C);[5] 4) count IV – failure to notify users of deletion of information from file, 15 U.S.C. §1681i(d); and 5) count V – failure to follow reasonable procedures to maintain accuracy, 15 U.S.C. §1681k.  In count VI plaintiff asserts a state common law claim for information negligently supplied for the guidance of others relying upon Restatement (Second) of Torts § 552.

---

[4] Mrs. Schweitzer filed the complaint in the Court of Common Pleas, Allegheny County Pennsylvania, on March 14, 2008 at Docket No. GD-08-005377, which defendants removed to federal court on April 7, 2008 (Docket No. 1).

[5] Plaintiff incorrectly cites to 15 U.S.C. § 1681i(c) as the relevant section of the FCRA for her claims in count III.  The appropriate section appears to be 15 U.S.C. §1681i(a)(5)(C).  15 U.S.C. § 1681i(c) provides:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

15 U.S.C. § 1681i(c).

Section 1681i(c) is not implicated in any claim plaintiff set forth in the complaint.  15 U.S.C. § 1681i(a)(5)(C) provides:

> **(C)  Procedures to prevent reappearance. -** A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

The allegations relied on for count III relate to an alleged failure to maintain procedures to prevent the reappearance of deleted information, thereby implicating 15 U.S.C. § 1681i(a)(5)(C).

After considering the Motion, defendant's Memorandum in Support of Defendant Equifax Information Services LLC's Motion for Summary Judgment on Claims of Linda O. Schweitzer (Docket No. 85), plaintiff's Response to Defendant Equifax Information Services LLC's Motion for Summary Judgment, ("Response to the Motion") (Docket No. 94), defendant's Reply Brief in Further Support of Defendant Equifax Information Services LLC's Motion for Summary Judgment ("Reply to Plaintiff's Response") (Docket No. 96), defendant's Concise Statement of Material Facts in Support of Motion for Summary Judgment on Claims of Linda Schweitzer ("Concise SMF") (Docket No. 86); defendant's Consolidated Statement of Undisputed Material Facts ("C.S.F.") (Docket No. 97),[6] all additional submissions of the parties, and drawing all reasonable inferences in favor of the plaintiff, the defendant's Motion will be granted for the reasons set forth below.

## II.  **Factual and Procedural Background**

### A.  Mrs. Schweitzer's Prior Lawsuit Against Equifax

---

[6]  The Consolidated Statement of Undisputed Material Facts (Docket No. 97) reflects a consolidation of defendant's Concise Statement of Material Facts on "Claims" of Linda Schweitzer ("Concise SMF") (Docket No. 86) and defendant's Concise Statement of Material Facts on "Claims" of William Schweitzer (Docket No. 91).  Plaintiff failed to file a statement of undisputed facts or to file a response to defendant's Concise Statement of Material Facts on "Claims" of Linda Schweitzer or of Mr. Schweitzer.  Due to plaintiff's failures to file responsive concise statements of material fact, the material facts set forth in defendant's Consolidated Statement of Undisputed Material Facts are deemed admitted, pursuant to Local Civil Rule 56.E, which provides:

> **Admission of Material Facts.**  Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

LCvR 56.E.; see Beckinger v. Twp. of Elizabeth, 697 F.Supp.2d 610, 615 (W.D. Pa. 2010).

On August 30, 2006, Mrs. Schweitzer filed a lawsuit against Equifax in the Magisterial District Court[7] No. 05-02-06, of Allegheny County, Pennsylvania at docket number CV-1123-06, referred to for purposes of the Motion as "Schweitzer I".  (C.S.F. ¶ 35; Concise SMF, Ex. A.)  In Schweitzer I, Mrs. Schweitzer alleged that defendant included false or misrepresented information on credit reports and failed or refused to exercise reasonable care or competence in correcting its errors.  (C.S.F. ¶ 36.)  Mrs. Schweitzer and Equifax agreed to settle Schweitzer I, and on November 9, 2006, Mrs. Schweitzer filed a notice of settlement and withdrawal with the magisterial court.  (C.S.F.

---

[7] A magisterial district court is:

   Magisterial district judges preside over magisterial district judge courts in all counties but Philadelphia. They have authority to:

   - conduct non-jury trials concerning criminal summary matters not involving delinquent acts as defined in 42 Pa.C.S., § 6301 *et seq*
   - conduct non-jury trials concerning civil claims (unless the claim is against a Commonwealth party as defined in 42 Pa.C.S., § 8501) where the amount in controversy does not exceed $8,000, exclusive of interests and costs, in the following classes of actions:
   o landlord-tenant actions
   o assumpsit actions unless they involve a contract where the title to real estate may be in question
   o trespass actions
   o fines and penalties by any government agency
   - preside over preliminary arraignments and preliminary hearings
   - fix and accept bail, except in cases involving murder or voluntary manslaughter
   - issue arrest warrants
   - accept guilty pleas to the charge of Driving under the Influence (75 Pa.C.S.A., § 3731) so long as it is a first offense, no personal injury occurred to a third party other than the defendant's immediate family, property damage to any third party is less than $500 and the defendant is not a juvenile
   - preside over non-jury trials involving all offenses under Title 34 (Game).

   Magisterial district judges are not required to be lawyers, but if they are not, they must complete an educational course and pass a qualifying examination before they can take office. They must also complete one week of continuing education each year in a program administered by the Minor Judiciary Education Board. . . .

http://www.pacourts.us/Links/Public/AboutTheCourts.htm (last visited  9/20/2010).

¶¶ 37-39; <u>see</u> Notice of Settlement/Withdrawal, Concise SMF, Ex. C; <u>see also</u>

Declaration of Michael D. Douglas, Concise SMF, Ex. B ¶ 4.)

On January 2, 2007, Mrs. Schweitzer entered into a settlement agreement and

general release (the "Settlement Agreement") with Equifax.  (C.S.F. ¶¶ 39-41; <u>see</u>

Concise SMF, Ex. E.)  In the Settlement Agreement, Mrs. Schweitzer released Equifax

from all  claims arising prior to the date of that agreement, and confirmed the accuracy of

a November 7, 2006 credit report published by Equifax.  (C.S.F. ¶¶ 39-44.)  The relevant

paragraphs of the Settlement Agreement provide:

> 4.    In consideration for Equifax's payment of the sum
> described in paragraph 1 of this Agreement, [Mrs.]
> Schweitzer hereby releases, acquits and forever discharges
> Equifax and its respective officers, directors, employees,
> parent companies, subsidiaries, predecessor companies,
> successors and related companies from all claims,
> demands, sums of money, damages, causes of action,
> judgments, suits at law or in equity of any kind or nature
> between the parties arising **prior to this date**, relating to or
> arising directly or indirectly from those matters raised or
> asserted or which could have been asserted in [<u>Schweitzer
> I</u>] including, but not limited, to any claims against Equifax
> and/or its respective parent companies, subsidiaries,
> officers, directors, employees, predecessor companies,
> successors and related companies under the Fair Credit
> Reporting Act.
>
> . . . .
>
> 13.    Without limiting the generality of the foregoing,
> [Mrs.] Schweitzer certifies that the consumer file for Linda
> O.  Schweitzer, dated November 7, 2006, annexed hereto as
> Exhibit A, is true and accurate and that Equifax
> Information Services LLC may publish the information
> contained therein in its normal course of business pursuant
> to the Fair Credit Reporting Act.

(Concise SMF, Ex. E, Settlement Agreement ¶¶ 4, 13 (emphasis added), (Docket No. 86-5)).

The November 7, 2006 credit report attached to the Settlement Agreement did not include the numerous financial accounts disputed by Mrs. Schweitzer. (Resp. to Mot. (Docket No. 94 at 6.) Mrs. Schweitzer made no formal disputes about the attached credit report to Equifax, and did not ask Equifax to add a consumer statement to her credit report. (C.S.F. ¶¶ 29, 31, 33.) Mrs. Schweitzer cashed Equifax's settlement check. (Concise SMF, Ex. F, cancelled check; C.S.F. ¶ 62.)

B.    <u>Mrs. Schweitzer's Role and Claims in the Current Case</u>

On March 14, 2008, Mrs. Schweitzer and Mr. Schweitzer filed the instant action against Equifax, VantageScore Solutions LLC ("VantageScore"), and Fair Isaac Corporation ("Fair Isaac") based upon the Schweitzers' alleged inability to obtain consumer loans due to alleged inaccurate credit reporting. (Compl. ¶¶ 82-83.) In the complaint Mrs. Schweitzer alleges that Equifax misrepresented information and negligently supplied information on her credit reports. (Compl. ¶¶ 7-8; C.S.F. ¶¶ 36-37.)

On April 7, 2008, the case was removed to federal court. (Notice of Removal) (Docket No. 1.) Plaintiff voluntarily withdrew her claims against defendants VantageScore and Fair Isaac and those defendants were dismissed from the case. (Docket Nos. 19, 35.)

On March 6, 2009, Equifax filed a motion to dismiss Mrs. Schweitzer as a party. (Docket No. 64.) Mr. Schweitzer responded to Equifax's motion by affirming his intention of transferring Mrs. Schweitzer's claims to him and terminating her as a named party in the case. (Docket No. 65.)

On April 20, 2009, the court terminated Mrs. Schweitzer as a named plaintiff, by reason of the assignment of her claims to Mr. Schweitzer, a party in interest. (<u>See</u> Tr.

Hrg. Apr. 20, 2009.)  On January 8, 2010, defendant Equifax filed the Motion, acknowledging that Mrs. Schweitzer was terminated as a plaintiff in the case and that her claims were assigned to Mr. Schweitzer.  (S.J. Memo 1 n.1.)

        C.        Equifax's Credit Reporting Methods

Equifax maintains that it is a consumer reporting agency, as defined by the FCRA, and that it employs reasonable reporting and investigation procedures to ensure accurate credit reports.  (C.S.F. ¶¶ 1-28.)  Equifax creates and disseminates credit reports from information received from approximately 40,000 sources, including creditors, public records, merchants, and others.  (Id. ¶¶ 2-3.)  The credit information Equifax compiles from its sources is stored in a computer database which contains approximately two hundred million names and addresses as well as over one billion trade lines containing information about consumer accounts, judgments, and other data.  (Id. ¶ 3.) Equifax receives reports of millions of accounts from lenders on a daily basis.  Lenders provide identifying information such as address, social security and date of birth.  This information is used to link the credit items to the appropriate individual consumer.  (Id. ¶ 4.)  Credit reports are provided only to subscribers who have a permissible purpose in obtaining the reports, and Equifax only uses sources of credit information ("data furnishers") if they are determined to be reasonably reliable.  (Id. ¶¶ 2, 5.)  Data furnishers are considered to be reliable either on the basis of Equifax's prior experience with the source or on the basis of the particular source's reputation as being reliable.  (Id. ¶ 5.)

Equifax's procedures to maintain the accuracy of its consumer reports begin when a company requests to become a customer and data furnisher, as Equifax conducts an

investigation of all such companies at that time.  (Id. ¶¶ 6-8.)  A new data furnisher signs an agreement for service ("Agreement Service"), which includes certifications under the FCRA and applicable state laws, as well as stating the data furnisher will provide accurate information, will perform reinvestigations upon request, and will obtain consumer reports only for valid, permissible purposes pursuant to § 1681b of the FCRA.  (Id. ¶ 9.)  Equifax conducts tests to assure information provided by data furnishers is accurately loaded into its database and employs procedures to assure information is being reported in the proper format.  (Id. ¶¶ 10-11.)

Equifax handles disputes from consumers regarding the accuracy of the contents of their credit files through procedures designed to verify the information obtained from particular sources.  Equifax initiates these procedures upon receipt of a dispute in accordance with the duty imposed by the FCRA to provide accurate information and verify information when requested to do so.  (Id. ¶¶ 12-14.)  A consumer may dispute information in the consumer's credit file via telephone, mail, internet, or facsimile.  (Id. ¶ 15.)  When Equifax receives a dispute, it makes an electronic record of the dispute, on or about the time it is received, in a computer system referred to as "ACIS."   (Id. ¶ 26.) The ACIS record will eventually show when and how the dispute was received, as well as the steps taken in the reinvestigation of the dispute and the date the results of the reinvestigation were sent to the consumer.  (Id. ¶¶ 27-28.)

Upon receipt of a dispute in which the consumer has provided sufficient identifying information such as name, address, and social security number, Equifax begins investigation by locating the consumer's file in its database  (Id. ¶ 16.)  If the consumer has not provided sufficient information to allow Equifax to locate the file, then

Equifax proceeds by sending a letter to the consumer requesting additional information. (Id. ¶ 17.)  If Equifax is able to locate the file, it reviews and considers any relevant information provided by the consumer pertaining to the nature of the dispute as well as reviewing the contents of the file.  If the consumer provides authentic, relevant, and otherwise appropriate documentation, and if the nature of the documentation is sufficient, Equifax will make any necessary updates to the consumer's credit file.  (Id. ¶¶ 18-19.)

If further investigation of the consumer's dispute is necessary, Equifax communicates with the data furnisher to advise it about the dispute, the receipt of any relevant information, and the consumer's account information as it currently appears. (Id. ¶ 20.)  These communications between Equifax and the data furnisher are typically made through a process in which Equifax electronically transmits a form to the data furnisher called an Automated Consumer Dispute Verification ("ACDV").  (Id. ¶ 22.)  An ACDV is an automated communication from Equifax to the data furnisher.  Once the data furnisher receives the ACDV it performs its own investigation and sends the ACDV back to Equifax to verify, modify, or delete the contested information.  (Id. ¶¶ 23-24.)  Equifax makes any necessary updates to the credit file and sends the consumer a copy of the reinvestigation results, an updated disclosure, and a copy of the consumer's rights under the FCRA.  The consumer's rights under the FCRA include the right to add a consumer statement to the credit file if the consumer does not agree with the reinvestigation results. (Id. ¶ 25.)

D.    Six Disputed Items

Six disputed items provide the foundation for plaintiff's claims of inaccuracy in Mrs. Schweitzer's credit report.  Plaintiff claims the following six items are inaccurately

reported: 1) a $147,000 tax lien bearing lien number GD956532; 2) an AmeriCredit account beginning with 40166*; 3) a Duquesne Light Company account ending in *6349; 4) an EMC Mortgage account ending in *0231; 5) a First Premier account ending in *0301; and 6) a S&T Bank account ending in *9850.  (Id. ¶ 76.)

Based upon the alleged inaccuracy of these six items and the alleged resultant harm suffered, plaintiff claims defendant committed five violations of the FCRA and is liable under a state common law for negligently supplying information for the guidance of others.  (Id. ¶¶ 144-60).  Mrs. Schweitzer admitted that she did not make any effort to dispute the six items directly to Equifax.  (Id. ¶ 29.)  Equifax did not report any of the accounts identified in the preceding paragraph after January 2, 2007.  (Id. ¶ 31.)

E.      The Series of Credit Reports

With respect to the six disputed items, plaintiff alleges that Equifax disseminated four credit reports between November 2006 and October 2007.   (See Six-Disputed Items Table, Resp. to Mot. SJ 6.) (Docket No. 94).  The first was dated November 7, 2006, followed by reports dated November 27, 2006, March 21, 2007, and October 17, 2007. (Resp. Mot. SJ, Ex. 1 (Docket No. 94-1.))  The credit report dated November 7, 2006, does not contain any of the six items which are the subject of this action.  The reports dated November 27, 2006 and March 21, 2007, however, show that all six disputed items were added back into her credit file.  (Id. at 6.)  The October 17, 2007 report contains some, but not all, of the six disputed items.  (Id.)

On November 30, 2006, either Mr. or Mrs. Schweitzer [8] sent an email to Equifax's counsel indicating the November 27, 2006 report was rejected. (Compl., Ex. A, pt. A at 6 (Docket No. 1-3.)) In doing so, plaintiff did not follow the standard dispute procedure of sending a dispute directly to Equifax. (C.S.F. ¶¶ 15-19.) Mrs. Schweitzer did not submit a dispute to Equifax concerning the accuracy of her credit file after she signed the Settlement Agreement. (Id. ¶ 29.) She never asked Equifax to add a consumer statement to her credit File. (Id. ¶ 33; Ex. D, Linda O. Schweitzer Dep. May 4, 2009; ) Ms. Schweitzer's credit file with Equifax contains accurate derogatory credit history including a bankruptcy and late payments on her mortgage. (Id. ¶¶ 45-48.) She "does not recall" (1) what information she believes to be inaccurate on her credit file; (2) when she was ever denied credit based upon a Equifax credit file; (3) whether she is making a claim for emotional distress in this case; or (4) whether she has any out-of-pocket expenses or monetary loss. (Id. ¶¶ 50-56.)

III. **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[8] The reference listed on the document attached to the complaint at Ex. A, titled "Events history – Part A," indicates that "Plaintiff e-mail to Defendants [sic] Counsel rejecting the '**2nd new Credit Report**' **. . . .**" (Compl., Ex. A, Docket No. 1-3 at 6). It is not clear whether "Plaintiff" refers to Mrs. Schweitzer or to her husband, Mr. Schweitzer.

The nonmoving party must adduce sufficient evidence within the record, and cannot rely upon conclusory or vague allegations or statements. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Evidence must be provided for each element of all individual claims, and the evidence must be such that a reasonable fact-finder could find in that party's favor at trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A nonmoving party, must "'designate 'specific facts showing that there is a genuine issue for trial.'" <u>Orenge v. Veneman</u>, No. 04-297, 2006 WL 2711651, at *6 (W.D. Pa. Sept. 20, 2006) (quoting <u>Celotex</u>, 477 U.S. at 324).

A motion for summary judgment will be defeated when there is a genuine issue of material fact, but will not be defeated by mere existence of some disputed facts. <u>Anderson</u>, 477 U.S. at 248. To determine whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u> at 249. To decide the merits of a motion for summary judgment, the court may consider any evidence that would be admissible at trial. <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir. 1993); <u>Pollack v. City of Newark</u>, 147 F. Supp. 35, 39 (D. N.J. 1956), <u>aff'd</u>, 248 F.2d 543 (3d Cir. 1957) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

**IV.** **Discussion**

Defendant argues that plaintiff's assigned claims are barred by a settlement and in the alternative plaintiff failed to adduce sufficient evidence to establish any claim asserted. Each argument will be addressed.

      A.      Effect of the Settlement Agreement on the Claims Assigned by Mrs. Schweitzer to Plaintiff

Defendant argues, among other things, that the Settlement Agreement signed by Mrs. Schweitzer on January 2, 2007 bars the assigned claims. Defendant contends that in the Settlement Agreement Mrs. Schweitzer expressly and completely released Equifax from all claims related to her credit file and under the FCRA, and that those same claims cannot be relitigated in this lawsuit. Defendant maintains that when Mrs. Schweitzer signed the Settlement Agreement on January 2, 2007, she confirmed the accuracy of the November 7, 2006 credit report, agreed that Equifax could publish the contents of the her file related to the November 7, 2006 credit report in its normal course of business, and subsequently failed to raise any disputes directly to Equifax about her credit report since signing the Settlement Agreement. Defendant contends that the scope of the Settlement Agreement covers all claims that Mrs. Schweitzer asserted, or could have asserted up until January 2, 2007.

Plaintiff concedes that Mrs. Schweitzer confirmed the accuracy of the November 7, 2006 credit report attached to the Settlement Agreement, but that she believed that she was releasing only claims associated with that specific report, and not any claims that might arise after the Settlement Agreement, including those claims at issue in the instant action. Plaintiff argues that since the assigned claims are based upon Corinthian's denial

of her mortgage refinancing on February 20, 2007, they could not have existed when Mrs. Schweitzer signed the Settlement Agreement on January 2, 2007.

As a threshold matter, it is axiomatic under Pennsylvania law that plaintiff as an assignee takes Mrs. Schweitzer's claims to all the limitations and defenses applicable to Mrs. Schweitzer.  See Smith v. Cumberland Group, Ltd., 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997)(citing Peoples Pittsburgh Trust Co. v. Commonwealth, 60 A.2d 53, 56 (Pa. 1948)).  The discussion that follows reflects the limitations and defenses which flow from the Settlement Agreement entered into by Mrs. Schweitzer.

Under Pennsylvania law, settlement agreements are contracts and follow the rules of contract interpretation.  Friia v. Friia, 780 A.2d 664, 668 (Pa. Super. Ct. 2001).  The Court of Appeals for the Third Circuit has instructed that "'[b]asic contract principles . . . apply to settlement agreements [and] . . . contract interpretation is a question of fact,' . . . '[i]n contrast, contract construction, that is, the legal operation of the contract is a question of law. . . .'"  Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 269 (3d Cir. 2002) (quoting In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000)).

Contract interpretation exists to determine the intentions of contracting parties through objective manifestations of intent.  See Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (citing Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. Pa. 1980) ("[t]he courts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent.").  The court "assumes that the intent of the parties to an instrument is 'embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the

agreement.'"  <u>Hullett</u>, 38 F.3d at 111 (quoting <u>County of Dauphin v. Fidelity & Deposit</u>

<u>Co.</u>, 770 F. Supp. 248, 251 (M.D. Pa. 1991); <u>see</u> <u>LJL Transp. Inc. v. Pilot Air Freight</u>

<u>Corp.</u>, 962 A.2d 639, 647 (Pa. 2009) ("When the words of an agreement are clear and

unambiguous, the intent of the parties is to be ascertained from the language used in the

agreement . . . which will be given its commonly accepted and plain meaning.") (internal

citations omitted).

     The court is free, however, to read the contract in the context that it was made.

<u>See</u> <u>Hullett</u>, 38 F.3d at 111 (citing <u>Steuart v. McChesney</u>, 444 A.2d 659, 662 (Pa. 1982)).

To ascertain the parties' intentions, the court can use "'the words of the contract, the

alternative meaning suggested by counsel, and the nature of the objective evidence to be

offered in support of that meaning.'"  <u>Hullett</u>, 38 F.3d at 111 (quoting <u>Mellon Bank</u>, 619

F.2d at 1011).

     The threshold issue in resolving contractual disputes is whether the provisions of

the contract in issue contain an ambiguity.  The United States Court of Appeals for the

Third Circuit discussed ambiguity in the context of an agreement in <u>Great American</u>

<u>Insurance Co. v. Norwin School District</u>, 544 F.3d 229 (3d Cir. 2008).

> A contract contains an ambiguity if it is reasonably
> susceptible of different constructions and capable of being
> understood in more than one sense. . . . when applied to a
> particular set of facts. . . . The meaning of an unambiguous
> written instrument presents a question of law for resolution
> by the court.

<u>Great Am. Ins. Co.</u>, 544 F.3d at 243.  In other words, ambiguity exists if the language

creates more than one reasonable interpretation.  <u>Mellon Bank</u>, 619 F.2d at 1011 (quoting

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unbar. 1971)(determining that

ambiguity is defined as "'[i]ntellectual uncertainty; [or] the condition of admitting two or

more meanings, of being understood in more than one way, or referring to two or more things at the same time'"). If the language is determined to be ambiguous, the fact-finder resolves the matter. See Pacitti by Pacitti v. Macy's, 193 F.3d 766, 773 (3d Cir. Pa. 1999). If the language is unambiguous, however, and indicates an indisputable interpretation, the court interprets the contract as a matter of law. Id.; See Hullett, 38 F.3d at 111 (holding that summary judgment is appropriate for contracts involving unambiguous language); see also Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 282 (D. N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993) (same).

Here, there is no dispute that the Settlement Agreement between Equifax and Mrs. Schweitzer is a contract. Plaintiff and defendant disagree, however, about the interpretation of the phrase "prior to this date" contained in the Settlement Agreement. Plaintiff contends that the Settlement Agreement settled all claims pertaining to the case through August 30, 2006, the date she filed her complaint in Schweitzer I. (Compl. ¶ 11.) In the alternative, plaintiff argues that the November 9, 2006 credit report attached to the Settlement Agreement was the date indicated in the Settlement Agreement. (Resp. to Motion 2-3.) Defendant contends that the date refers to the date the Settlement Agreement was signed, i.e., January 2, 2007. (S.J. Memo 7.) Determination of the date intended by the parties is critical because it is a November 27, 2006 credit report – dated before the parties signed the Settlement Agreement on January 2, 2007 – which plaintiff alleges is the first credit report to include the disputed inaccuracies.

Mrs. Schweitzer filed <u>Schweitzer I</u>, on August 30, 2006.[9]  In that case, she alleged that defendant included misrepresentations or false information on credit reports and failed to exercise reasonable care when alerted to errors by plaintiff.  Upon agreeing with defendant to settle <u>Schweitzer I</u>, Mrs. Schweitzer filed a notice of settlement and withdrawal with the state court on November 9, 2006.   (CSF ¶¶ 5-9.)  On January 2, 2007, Mrs. Schweitzer and defendant signed the Settlement Agreement, in which Mrs. Schweitzer agreed to release all claims that relate to or arose from the matters asserted or which could have been asserted in <u>Schweitzer I</u> "prior to this date."  (CSF ¶ 10.)

The court finds that the phrase "prior to this date" clearly and unambiguously refers to the date of the Settlement Agreement – January 2, 2007 – for two reasons.  First, the Settlement Agreement was signed and dated on January 2, 2007 and that is the only date appearing within the four corners of the Settlement Agreement before the phrase "prior to this date."  Therefore, the plain meaning of the phrase "prior to this date" in this context clearly refers to the first line of the Settlement Agreement.  (Settlement Agreement, Concise SMF, Ex. C at 1.)

Second, the only other date within the Settlement Agreement appears at paragraph 13, and provides that Mrs. Schweitzer approved an attached credit report "dated November 9, 2006"; the plain meaning of this date is to modify the description of the attached credit report, and cannot reasonably be understood to modify the scope of the Settlement Agreement.  (<u>Id.</u> at 4.)  Because no other dates or time frames are contained in the Settlement Agreement pertaining to any time limitations relating to the Settlement

---

[9]    Defendant asks that the court to take judicial notice of proceedings in <u>Schweitzer I</u>.  The court can take judicial notice of court proceedings.  <u>See</u> <u>Hudson v. Goob</u>, No. 07-1115, 2009 WL 789924, at *2 (W.D. Pa. Mar. 24, 2009) (holding that in a motion for summary judgment, a district court may take judicial notice of dockets from the Allegheny County Court of Common Pleas).

Agreement, the unambiguous date through which plaintiff released claims was January 1, 2007. This interpretation effectively bars plaintiff from raising any claims asserted in Schweitzer I, claims that could have been asserted in Schweitzer I, or related claims that arose prior to January 2, 2007.

Plaintiff is barred from bringing the current claims because Mrs. Schweitzer signed the Settlement Agreement on January 2, 2007, releasing Equifax from all claims arising prior to that date relating to matters that were or could have been brought in Schweitzer I. She confirmed the truth and accuracy of the credit report of November 7, 2006 – attached to the Settlement Agreement – and had received a credit report dated November 26, 2006, which plaintiff averred had "nothing in common" with the November 7, 2006 credit report. (Compl., Ex. A at 6.). The November 26, 2006 report contained the credit items that had been removed from the November 7, 2006 credit report. (Id.) Although plaintiff claims Mrs. Schweitzer notified defendant's counsel about this allegedly "erroneous" report, plaintiff did not present any evidence that Mrs. Schweitzer notified defendant about the alleged errors. Because Mrs. Schweitzer did not follow defendant's standard dispute procedure, she did not trigger a response from defendant. Despite the lack of response from Equifax on this matter, Mrs. Schweitzer still signed the Settlement Agreement on January 2, 2007 and approved the attached credit report dated November 7, 2006, which she conceded she suspected was outdated and erroneous. Thus, viewing all evidence in favor of the nonmoving party, there is no material fact at issue with respect to the Settlement Agreement and summary judgment must be granted in favor of defendant with respect to any of plaintiff's claims that relate

to the claims asserted in <u>Schweitzer I</u> and arose prior to January 2, 2007.  Accordingly, all claims based upon the November 27, 2006 credit report are barred.

       B.      <u>Failure to Establish Elements of the Claims</u>

In the alternative, defendant argues that even if the Settlement Agreement does not bar the assigned claims, summary judgment should be granted because plaintiff failed to adduce sufficient evidence to establish his claims.

The FCRA claims will be addressed first and then the state law claim will be discussed.

       1.    <u>FCRA Claims</u>

         (a)  <u>Applicable Law</u>

"'The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" <u>Cortez v. Trans Union, LLC</u>, Nos. 08-2465, 08-2466, 2010 WL 3190882, at *10 (3d Cir. Aug. 13, 2010) (quoting <u>Guimond v. Trans Union Credit Info. Co.</u> 45 F.3d 1329, 1333 (9th Cir. 1995)).  In discussing the Congressional intent of the FCRA, the Court of Appeals for the Third Circuit in <u>Cortez</u> commented:

> Congress intended to promote efficiency in the nation's banking system and to protect consumer privacy. *TRW Inc. v. Andrews,* 534 U.S. 19, 24, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (citing 15 U.S.C. § 1681(a)). Congress addressed the latter concern by including provisions intended "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969). Congress also hoped to address a number of related problems,

> including "the inability at times of the consumer to know he is being damaged by an adverse credit report," the lack of "access to the information in [his] file," the "difficulty in correcting inaccurate information," and "getting [his] version of a legitimate dispute recorded in ... [his] credit file." *Id.* at 3 (1969). "These consumer oriented objectives support a liberal construction of the FCRA," and any interpretation of this remedial statute must reflect those objectives. *Guimond,* 45 F.3d at 1333.

Id.

Plaintiff alleges violations of five provisions of the FCRA.

1.) Count I – Failure to Follow Reasonable Procedures to Maintain Accuracy, 15 U.S.C. § 1681e(b).

15 U.S.C. § 1681e(b) provides in relevant part:

**(b) Accuracy of report**

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

2.) Count II – Failure to Reinvestigate at the Consumer's Request, 15 U.S.C. § 1681i(a).

15 U.S.C. § 1681i(a) provides in relevant part:

**(a) Reinvestigation of disputed information**

**(1) Reinvestigation required. -**

**(A) In general**. - … [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, … of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file. . . .

\*\*\*

**(3) Determination that dispute is frivolous or irrelevant**. -

 **(A) In general.** – Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.

15 U.S.C. § 1681i(a)(1)(A), (3)(A).

 3.) Count III – Failure to delete information found to be inaccurate, incomplete, or unverified, 15 U.S.C. § 1681i(a)(5)[10]

15 U.S.C. § 1681i(a)(5) provides in relevant part:

 **(a)(5) Treatment of inaccurate or unverifiable information. -**
 **(B) Requirements relating to reinsertion of previously delete material. –**
 **(i) Certification of accuracy of information. -** If any information is deleted from a consumer's file pursuant to subparagraph (A) [deletion or modification of information upon finding that information is inaccurate or incomplete or cannot be verified], the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

 **. . . .**

 **(C) Procedures to prevent reappearance. -** A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

---

[10]   As noted previously, plaintiff incorrectly cites § 1681i(c) as being the relevant section of the FCRA for Count III.

15 U. S. C. § 1681i(a)(5)(B)(i), (C).

    4.) <u>Count IV – Failure to notify users of deletion of information from file</u>, 15 U.S.C § 1681i(d)

15 U.S.C. § 1681i(d) provides in relevant part:

**(d)  Notification of deletion of disputed information**

Following any deletion of information which is found to be inaccurate or whose accuracy can no longer be verified or any notation as to disputed information, the consumer reporting agency shall, at the request of the consumer, furnish notification that the item has been deleted or the statement, codification or summary pursuant to subsection (b) or (c) of this section to any person specifically designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information.

15 U.S.C. § 1681i(d).

    5.) <u>Count V – Failure to follow reasonable procedures to maintain accuracy</u>, 15 U.S.C. § 1681k

15 U.S.C. § 1681k provides in relevant part:

**(a) In general**

    A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—

    **(1)** at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

> **(2)** maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1), (2).

In disputing the accuracy of Mrs. Schweitzer's credit reports and that Equifax employs fair credit reporting methods, plaintiff points to inconsistencies among four credit reports dated respectively November 7, 2006, November 27, 2006, March 21, 2007 and October 17, 2007. Plaintiff contends that the alleged inaccuracies in the March 21, 2007 credit report resulted in the denial of mortgage refinancing loans. Plaintiff argues that the inconsistencies themselves prove Equifax's failure to utilize reasonable credit reporting procedures.

Defendant maintains that plaintiff cannot prove the essential elements of the FCRA claims because plaintiff did not present any evidence that Equifax: 1) ever reported any inaccurate or misrepresented information about Mrs. Schweitzer's credit history, 2) does not employ fair reporting techniques, or 3) otherwise violated the FCRA.

(a) <u>Count I</u>

To prevail on a § 1681e(b) claim, a plaintiff must show that: "'(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'" <u>Cortez</u>, 2010 WL 3190882, at *11 (quoting

<u>Philbin v. Trans. Union Corp.,</u> 101 F.3d at 957, 963).  Plaintiff  cannot establish a prima

facie case with respect to the assigned claims in count I because he failed to provide

evidence that Mrs. Schweitzer's credit reports contained inaccurate information.  The

first element in to establish a prima facie case of a violation of § 1681e(b) is that a

consumer "must present evidence tending to show that a credit reporting agency prepared

a report containing 'inaccurate' information."  <u>Philbin</u>, 101 F.3d at 964 (quoting <u>Cahlin v.</u>

<u>Gen. Motors Acceptance Corp.</u>, 936 F.2d 1151, 1156 (11th Cir. 1991)).  Here, plaintiff's

evidence of inaccuracy is limited to the inconsistent credit reports.  She did not present

any evidence that the challenged information was inaccurately reported under those

circumstances.

The plain wording of § 1681e(b) also requires Equifax to follow reasonable

procedures to ensure accuracy in credit reports it prepares.  "'[C]ourts have generally

assumed that burden falls on the plaintiff'" to show the consumer reporting agency has

not followed reasonable procedures.  <u>Id.</u> (quoting <u>Stewart v. Credit Bureau, Inc.</u>, 734 F.2d

47, 51 n.5 (D.C. Cir. 1984) (per curiam) (citing <u>Hauser v. Equifax, Inc.</u>, 602 F.2d 811,

814-15 (8th Cir. 1979); <u>Morris v. Credit Bureau of Cincinnati, Inc.</u>, 563 F.Supp. 962, 968

(D.C. Ohio 1983); <u>Alexander v. Moore & Assocs., Inc.</u>, 553 F.Supp. 948, 954 (D.C.

Haw. 1982)).  Therefore, "'a plaintiff must minimally present some evidence from which

a trier of fact can infer that the consumer reporting agency failed to follow reasonable

procedures in preparing a credit report.'"  <u>Id.</u> (quoting <u>Stewart</u>, 734 F.2d at 51).  The

FCRA, however, "'does not make reporting agencies strictly liable for all inaccuracies.'"

<u>Id.</u> at 964-65 (quoting <u>Cahlin</u>, 936 F.2d at 1156).

In <u>Philbin</u>, the court of appeals noted:

> *"The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures*, which will be a jury question in the overwhelming majority of cases. Thus, prior to sending a [§ 1681e(b)] claim to the jury, a credit reporting agency can usually prevail *only if a court finds, as a matter of law, that a credit report was 'accurate.'"*

<u>Id.</u> at 965 (quoting <u>Cahlin</u>, 936 F.2d at 1156)(emphasis added). In <u>Philbin</u>, the defendants did not dispute that at least one of two inconsistent credit reports contained inaccurate information and the inconsistencies related to the inaccurate information. The defendants argued that the plaintiff failed to show the inaccuracies caused his injuries. The court of appeals disagreed and held a jury could infer on those facts that the credit agency "did not follow reasonable procedures." <u>Id.</u> at 966. The instant case is unlike the situation in <u>Philbin</u> because Equifax contends the information it reported was accurate and it detailed the reasonableness of the procedures taken to verify the information, which plaintiff did not refute.

In <u>Cortez</u>, the Court of Appeals for the Third Circuit reviewed its holding in <u>Philbin</u> with respect to the determination of the reasonableness of a credit reporting agency's procedures. In that case, unlike here, it was uncontroverted that the challenged information in a credit report was inaccurate. The credit report incorrectly noted the plaintiff was on a list of individuals whose "assets are blocked and U.S. persons are generally prohibited from dealing with them." <u>Cortez</u>, 2010 WL 3190882, at  *1. The court of appeals stated:

> [T]he reasonableness of a credit reporting agency's procedures is "normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver v. Experian Info. Solutions,* 390

F.3d 969, 971 (7th Cir. 2004). In *Philbin,* we listed three different approaches that various courts have taken in determining if a plaintiff has introduced sufficient evidence to reach the jury under § 1681e(b). Those approaches are: "that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures; that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." *Philbin,* 101 F.3d at 965. We did not have to decide upon any one approach in *Philbin* because the plaintiff had produced evidence sufficient to meet any of the three standards. *Id.* at 966. The same is true here.

Cortez, 2010 WL 3190882, at *13.

In the instant case, however, the same is not true. Plaintiff did not adduce evidence to show the reports were inaccurate or to controvert Equifax's evidence that it followed reasonable procedures to ensure the accuracy of the six disputed items. The only evidence in the record of inaccuracy and failure to follow reasonable procedures is that the disputed items were taken off the November 7, 2006 report and reinserted in the November 27, 2006 and subsequent reports. Unlike in Philbin and Cortez, there is nothing in the record here to support the claims of inaccuracy, other than plaintiff's undocumented conclusions to support his claims of inaccuracy regarding the disputed items. In this case, Equifax detailed the procedures it followed and plaintiff did not adduce evidence to the contrary.

The record reflects that Equifax reinserted the challenged items pursuant to § 1681i(a)(5)(B)(i) ("[T]he information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate"). Equifax followed its standard dispute procedure

by contacting the specific data furnishers. Equifax verified and updated Mrs. Schweitzer's information where necessary, and plaintiff did not provide evidence to show the contrary. Because there is no evidence that the credit reports were inaccurate and the evidence of reasonableness of the procedures followed by Equifax was uncontroverted, a reasonable jury could not render a verdict in plaintiff's favor with respect to this claim. Summary judgment must be granted in favor of defendant with respect to plaintiff's claim that Equifax's failed to follow reasonable procedures to maintain accuracy.

(b) Count II

With respect to Count II, plaintiff failed to adduce evidence to show a disputed issue of material fact exists. Plaintiff failed to provide any evidence from which a reasonable jury could find that Equifax failed to reinvestigate at the request of Mrs. Schweitzer under § 1681i(a). Equifax never received a request from Mrs. Schweitzer and there is nothing in the record to show otherwise. With respect to the November 27, 2006 credit report, Mrs. Schweitzer or Mr. Schweitzer complained to Equifax's attorney on November 30, 2006 – prior to Mrs. Schweitzer's execution of the Settlement Agreement. Plaintiff did not point to any case law supporting a conclusion that complaining to an attorney is an appropriate means of communicating a dispute to Equifax. Mrs. Schweitzer did not submit a request with respect to the March 21, 2007 or the October 17, 2007 credit report. Under these circumstances no reasonable jury could render a verdict in favor of plaintiff on this claim and summary judgment must be granted in defendant's favor with respect plaintiff's claim that defendant failed to reinvestigate Mrs. Schweitzer's consumer requests.

(c) <u>Count III</u>

With respect to count III, plaintiff failed to provide any evidence demonstrating that Equifax failed to delete information found to be inaccurate, incomplete, or unverifiable under § 1681(a)(5)(C).[11]  Mrs. Schweitzer never disputed any of the items after she signed the Settlement Agreement.  Therefore, Equifax's duty under the FCRA was not triggered with regard to § 1681(a)(5)(C).  No reasonable jury could render a verdict in favor of plaintiff on this claim and summary judgment must be granted in favor of defendant with respect to plaintiff's claim that defendant failed to delete information found to be inaccurate, incomplete, or unverifiable.

(d) <u>Count IV</u>

With respect to Count IV,  plaintiff failed to provide any evidence demonstrating that Equifax failed to notify users of the deletion of information upon the request of the consumer, which would be necessary to show a violation of § 1681i(d).  There is no evidence in the record of Equifax receiving any requests from Mrs. Schweitzer to have deletion notices sent to users.  Thus, Equifax's obligations under the FCRA were never triggered under § 1681i(d).  No reasonable jury could render a verdict in favor of plaintiff on this claim and summary judgment must be granted in favor of defendant with respect to plaintiff's claim that defendant failed to notify users about the deletion of information upon request of plaintiff.

---

[11]     As indicated above, plaintiff cites § 1681i(c) in relation to this count, but the applicable provision is § 1681i(a)(5)(C).

(e) Count V

With respect to count V, plaintiff failed to provide any evidence demonstrating that Equifax did not follow reasonable procedures to maintain accuracy in furnishing a consumer report for employment purposes under § 1681k.  There is no evidence in the record demonstrating that Mrs. Schweitzer requested Equifax to send a report for employment purposes.  Thus, Equifax's obligations under the FCRA were not triggered under § 1681k.  For these reasons, summary judgment must be granted in favor of defendant with respect to plaintiff's claim that defendant failed to follow reasonable procedures to maintain accuracy in furnishing plaintiff's report for employment purposes.

2.  State Law Claim

At count VI, plaintiff alleges a common law claim of negligently supplying information for the guidance of others.  The Pennsylvania Supreme Court adopted section 552 of the Restatement (Second) Torts as Pennsylvania law.  See Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999); see also Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994). Restatement (Second) of Torts § 552 (Information Negligently Supplied for the Guidance of Others) provides in relevant part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(1).

Under section 552 of the Restatement (Second) of Torts, liability is based upon "pecuniary loss" as a result of "justifiable reliance upon the information" provided. Id. Plaintiff cannot establish the essential elements of a prima facie case under section 552 of the Restatement (Second) of Torts.[12] Mrs. Schweitzer would not be an injured party in this instance because she is not a party to whom Equifax supplied information for "guidance" in "business transactions." See Id. ("One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.") Here, the entity which would have used the information in Mrs. Schweitzer's credit reports for guidance in business transactions is Corinthian Mortgage or another creditor. There is no evidence of record that Mrs. Schweitzer used the information for guidance in business transactions. See RESTATEMENT (SECOND) TORTS § 552 cmt. h ("The rule stated in this Section subjects the negligent supplier of misinformation to liability only to those persons for whose benefit and guidance it is supplied.").

In the instant matter, plaintiff also failed to provide evidence that there was false information contained in the reports, which would be necessary to establish his claim. There is no evidence in the record to show inaccuracy in the way the items were reported.

---

[12] This court could decline to exercise supplemental jurisdiction over the claim since it arises under state law and all the federal claims are being dismissed. 28 U.S.C. § 1367(c)(3) provides:

> (c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> . . . .
> > (3) the district court has dismissed all claims over which it has original jurisdiction, . . .

The court, however, will exercise jurisdiction over the state common law claim.

Without evidence of inaccuracy, plaintiff cannot establish a claim for negligent misrepresentation. <u>See</u> <u>Dinger v. Allfirst Fin., Inc.</u>, 82 F. App'x 261, 267 (3d Cir. 2003) (holding that without any evidence of false information, plaintiffs cannot verify a claim for negligent misrepresentation). No reasonable jury could render a verdict in favor of plaintiff on this claim and summary judgment must be granted in favor of defendant with respect to plaintiff's claim for negligently supplying information for the guidance of others.

V.      **<u>Conclusion</u>**

For the reasons set forth above, defendant Equifax Information Solutions LLC's Motion for Summary Judgment on all claims of plaintiff as assignee of the claims of Linda O. Schweitzer is **GRANTED.** An appropriate order will be entered.

Dated:   September 21, 2010                By the court:

<u>/s/  JOY FLOWERS CONTI</u>
Joy Flowers Conti
United States District Judge