IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM A. SCHWEITZER, JR.,    )
           )
      Plaintiff,    )
           )
v.           )      Case No. 08-478
           )
EQUIFAX INFORMATION SOLUTIONS LLC    )
           )
      Defendant.    )

## MEMORANDUM OPINION

CONTI, District Judge.

# I.  Introduction

In this memorandum opinion the court considers a motion for summary judgment (the "Motion") (Docket No. 88), filed by defendant Equifax Information Solutions LLC[1] ("defendant" or "Equifax) with respect to all federal and state common law claims asserted against defendant[2] by plaintiff William A. Schweitzer, Jr.[3] ("plaintiff" or "Mr. Schweitzer") in

---

[1] Defendant notes that its name was incorrectly identified in the complaint as Equifax Information Solutions LLC. The company's correct name is Equifax Information Services LLC.

[2] The complaint originally named two additional defendants, Fair Isaac Corporation and Vantagescore Solutions LLC, who were dismissed from this action on July 14, 2008. (See Docket Entry, July 14, 2008.)

[3] Plaintiff was pro se when the complaint was filed. Courts have an obligation to read liberally a pro se litigant's pleading. Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d. Cir. 1999) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Although plaintiff was pro se when the complaint was filed, his co-plaintiff, Mrs. Schweitzer, was represented by counsel when the complaint was filed. Plaintiff filed the amendment to the complaint, pro se. On June 17, 2009, plaintiff retained his wife's former counsel. (See Docket Entry, June 17, 2009.)

      The complaint originally named an additional plaintiff, Linda O. Schweitzer ("Mrs. Schweitzer"). Mrs. Schweitzer subsequently assigned all her claims to Mr. Schweitzer. Equifax filed a separate motion for summary judgment (Docket No. 84) to dismiss the assigned claims, which the court will address in a separate memorandum opinion.

the complaint[4] (Docket No. 1-2.)  Mr. Schweitzer's federal claims asserted on his own behalf

consist of five alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681

et seq., including: 1) count I – failure to follow reasonable procedures to maintain accuracy, 15

U.S.C. §1681e; 2) count II – failure to reinvestigate on consumer request, 15 U.S.C. §1681i(a);

3) count III – failure to delete information found to be inaccurate, incomplete or unverified, 15

U.S.C. §1681i(a)(5)(C)[5]; 4) count IV – failure to notify users of deletion of information from

file, 15 U.S.C. § 1681i(d); and 5) count V – failure to follow reasonable procedures to maintain

accuracy, 15 U.S.C. § 1681k.  In count VI plaintiff alleges a state common law claim for

information negligently supplied for the guidance of others, relying upon Restatement (Second)

of Torts § 552.

---

[4] Plaintiff filed the complaint, pro se, in the Court of Common Pleas, Allegheny County Pennsylvania, on March 14, 2008 at Docket No. GD-08-005377, which defendants removed to federal court on April 7, 2008 (See Docket No. 1).  Thereafter, plaintiff filed, pro se, an amendment to the complaint  (See Docket No. 31), in which he incorporates the state complaint as originally filed.  The amendment to the complaint reads more like a brief in support of the complaint, and does not add any additional material factual allegations.

[5] In count III, plaintiff incorrectly cites to 15 U.S.C. § 1681i(c) as the relevant section of the FCRA.  Upon review of plaintiff's claim it is apparent the plaintiff intended to cite 15 U.S.C. §1681i(a)(5)(C).  15 U.S.C. § 1681i(c) provides:

> Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

15 U.S.C. § 1681i(c).  The provisions set forth in § 1681i(c) do not implicate any of the claims plaintiff set forth in the complaint.  15 U.S.C. § 1681i(a)(5)(C) provides:

> **(a)(5) Treatment of inaccurate or unverifiable information. –**
>      **. . . .**
>  **(C)  Procedures to prevent reappearance. -** A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

The allegations relied on for count III relate to an alleged failure to maintain procedures to prevent the reappearance of deleted information, thereby implicating 15 U.S.C. § 1681i(a)(5)(C).

After consideration of the Motion, plaintiff's Response to Defendant Equifax Information

Services LLC's Motion for Summary Judgment, ("Response to the Motion") (Docket No. 94),

defendant's Consolidated Statement of Undisputed Material Facts ("C.S.F.") (Docket No. 97);[6]

and other submissions of the parties, the court will grant defendant's Motion with respect to all

six counts because plaintiff failed to adduce sufficient evidence to withstand the Motion.


## II. **Factual Background and Procedural History**

A.    Mr. Schweitzer's Prior Lawsuits Against Equifax

Prior to the instant action, Mrs. Schweitzer and plaintiff filed a number of lawsuits

against Equifax in state court claiming various items were misreported on credit reports

generated by Equifax and that this misrepresentation hindered their ability to obtain credit,

financing, and refinancing at competitive rates. (Compl. ¶¶ 104-06, 136.) Mrs. Schweitzer and

plaintiff separately filed the first two lawsuits. On August 30, 2006, Mrs. Schweitzer filed a

---

[6] The Consolidated Statement of Undisputed Material Facts (Docket No. 97) reflects a consolidation of defendant's Concise Statement of Material Facts on "Claims" of Linda Schweitzer" (Docket No. 86) and defendant's Concise Statement of Material Facts on "Claims" of William Schweitzer (Docket No. 91). Plaintiff failed to file a response to defendant's Concise Statement of Material Facts on "Claims" of William Schweitzer and on the "Claims" of Linda Schweitzer. Due to plaintiff's failure to do so, the material facts sets forth in defendant's Consolidated Statement of Undisputed Material Facts are considered admitted pursuant to Local Civil Rule 56.E, which provides:

> **Admission of Material Facts.** Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

LCvR 56.E; see Beckinger v. Twp. of Elizabeth, 697 F.Supp.2d 610, 615 (W.D. Pa. 2010).

lawsuit at docket number CV-1123-06 in Magisterial District Court[7] No. 05-2-06, of Allegheny

County, Pennsylvania.  (C.S.F. ¶ 35.)  On September 14, 2006, plaintiff filed a lawsuit in the

same magisterial district court at docket number CV-1193-06.  (C.S.F. ¶ 63.)  In these state

actions, the asserted claims were limited to common law claims of misrepresentation and

negligence relying upon section 552 of the Restatement (Second) of Torts.  (C.S.F. ¶¶ 37, 63.)

Plaintiff attempted to come to agreeable terms regarding the settlement of CV-1193-06

with Equifax, but refused to sign a settlement agreement relating to the claims in that case.

(Compl. ¶¶ 13, 66.)  Due to the failure to reach a settlement with Equifax regarding his claims in

CV-1193-06, on December 29, 2006, plaintiff filed a new complaint in the same magisterial

---

[7] **Magisterial District Courts**

Magisterial district judges preside over magisterial district judge courts in all counties but Philadelphia. They have authority to:

- conduct non-jury trials concerning criminal summary matters not involving delinquent acts as defined in 42 Pa.C.S., § 6301 *et seq*
- conduct non-jury trials concerning civil claims (unless the claim is against a Commonwealth party as defined in 42 Pa.C.S., § 8501) where the amount in controversy does not exceed $8,000, exclusive of interests and costs, in the following classes of actions:
  o landlord-tenant actions
  o assumpsit actions unless they involve a contract where the title to real estate may be in question
  o trespass actions
  o fines and penalties by any government agency
- preside over preliminary arraignments and preliminary hearings
- fix and accept bail, except in cases involving murder or voluntary manslaughter
- issue arrest warrants
- accept guilty pleas to the charge of Driving under the Influence (75 Pa.C.S.A., § 3731) so long as it is a first offense, no personal injury occurred to a third party other than the defendant's immediate family, property damage to any third party is less than $500 and the defendant is not a juvenile
- preside over non-jury trials involving all offenses under Title 34 (Game).

Magisterial district judges are not required to be lawyers, but if they are not, they must complete an educational course and pass a qualifying examination before they can take office. They must also complete one week of continuing education each year in a program administered by the Minor Judiciary Education Board. . . .

http://www.pacourts.us/Links/Public/AboutTheCourts.htm (last visited  9/20/2010).

district court at docket number CV-1588-06. (Compl. Ex. A at 6.) Plaintiff reasserted the claim of misrepresentation and negligently supplying information relying upon section 552 of the Restatement (Second) of Torts. (Compl. ¶ 13.) Plaintiff's cause of action at CV-1588-06 was plaintiff's second lawsuit in state court, but it is referred to in the pleadings as "Schweitzer I".[8] On March 1, 2007, plaintiff obtained a judgment against Equifax in Schweitzer I in magisterial district court in the amount of $4,113. (C.S.F. ¶ 70, see "Schweitzer I" Materials[9] (Docket No. 99-1) at 16.) Equifax paid the judgment by check, which plaintiff cashed. (C.S.F. ¶ 71.) The parties agree that the payment Equifax made to plaintiff in CV-1588-06 covered all plaintiff's claims through December 29, 2006, as demonstrated by plaintiff's signature on the cashed check. (Id. ¶ 72, see Ex. E, Def.'s Concise Statement of Material Facts in Support of the Motion for Summary Judgment ("Def.'s Concise S.M.F.") (Docket No. 91-5) at 2.)

On April 12, 2007, plaintiff filed a third lawsuit against Equifax in magisterial district court at docket number CV-355-07. Plaintiff alleged ongoing violations under the same tort theory as the first two suits. Equifax did not defend this lawsuit and plaintiff obtained a default judgment in his favor in the amount of $8,134.00. (Compl. ¶¶ 16, 22.) On August 3, 2007, Equifax appealed the default judgment, resulting in a case commencing de novo in the Court of Common Pleas, Allegheny County, Pennsylvania, at case number AR-07-8414. (Id. ¶ 23.) (See AR-07-8414, Ct. Com. Pl. Allegheny Cnty., Pa. (Doc. 1)).

---

[8] This was the first action to result in a final adjudication in the magisterial district court.

[9] Pursuant to an order dated June 30, 2010, defendant filed a copy of CV-1588-06 (Magisterial District of Allegheny County, Pennsylvania), designated as "Schweitzer I" in its memorandum in support of its motion for summary judgment on claims of plaintiff. (Docket No. 89.) The court's order was in response to defendant's request that the court take judicial notice of that adjudication. (See Def.'s Br. in Support of Mot. S.J. 6 n.3). The court may take judicial notice of public records, including judicial proceedings. See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (citing Iacaponi v. New Amsterdam Cas. Co., 379 F.2d 311, 311-12 (3d Cir. 1967)). There is no evidence of record, however, that there was an adjudication on the merits. There is no evidence that a hearing was held before the magisterial court or that the magisterial court considered the merits of the claims.

On or about August 27, 2007, plaintiff filed a complaint at the same case number, AR-07-8414, again alleging defendant's continuing violations of the original tort theory plaintiff asserted.  (Id. ¶ 24); see AR-07-8414, Ct. Com. Pl., Allegheny Cnty., Pa. (Doc. 2)).  On September 14, 2007, defendant removed that case to the United States District Court for the Western District of Pennsylvania at Civil Action No. 07-1243, claiming that the case arose under the FCRA.  (Id. ¶¶ 25-26.)  On October 29, 2007, the district court ordered a remand of the lawsuit.  (Id. ¶ 37.)  The state case at docket number AR-07-8414 was dismissed without prejudice.[10]

On March 14, 2008, plaintiff filed in state court a complaint against defendant alleging violations of FCRA and a state common law claim under a theory of information negligently supplied for the guidance of others relying upon Restatement (Second) of Torts § 552.  (Id. ¶¶ 144-60.)  On April 7, 2008, that case, which is the subject of this Motion,  was removed to federal court.  (Docket No. 1.)

B.      Background of Equifax's Procedures as a Consumer Reporting Agency

As defined by FCRA, Equifax is a consumer reporting agency.  (C.S.F. ¶ 1.)  Equifax creates and disseminates credit reports from information received from approximately 40,000 sources, including creditors, public records, merchants, and others.  (Id. ¶¶ 2-3.)  The credit information Equifax compiles from its sources is stored in a computer database which contains approximately two hundred million names and addresses as well as over one billion trade lines containing information about consumer accounts, judgments, and other data.  (Id. ¶ 3.)  Equifax receives reports of millions of accounts from lenders on a daily basis.  Lenders provide

_____

[10] The docket of the United States District Court of the Western District of Pennsylvania, Civil Action No. 07-1243, reflects that the matter was remanded back to the Court of Common Pleas, Allegheny County, Pennsylvania at AR-07-8414 due to a question of timeliness and the absence of defendant's objection to remand.

identifying information such as address, social security and date of birth.  This information is used to link the credit items to the appropriate individual consumer.  (Id. ¶ 4.)  Credit reports are provided only to subscribers who have a permissible purpose in obtaining the reports, and Equifax only uses sources of credit information ("data furnishers") if they are determined to be reasonably reliable.  (Id. ¶¶ 2, 5.)  Data furnishers are considered to be reliable either on the basis of Equifax's prior experience with the source or on the basis of the particular source's reputation for reliability.  (Id. ¶ 5.)

Equifax's procedures to maintain the accuracy of its consumer reports begin when a company requests to become a customer and data furnisher, as Equifax conducts an investigation of all such companies at that time.  (Id. ¶¶ 6-8.)  A new data furnisher signs an agreement for service, which includes certifications under the FCRA and applicable state laws, as well as stating the data furnisher will provide accurate information, will perform reinvestigations upon request, and will obtain consumer reports only for valid, permissible purposes pursuant to § 1681b of the FCRA.  (Id. ¶ 9.)  Equifax conducts tests to assure information provided by data furnishers is accurately loaded into its database and employs procedures to assure information is being reported in the proper format.  (Id. ¶¶ 10-11.)

Equifax handles disputes from consumers regarding the accuracy of the contents of their credit files through procedures designed to verify the information obtained from particular sources.  Equifax initiates these procedures upon receipt of a dispute in accordance with the duty imposed by the FCRA to provide accurate information and verify information when requested to do so.  (Id. ¶¶ 12-14.)  A consumer may dispute information in the consumer's credit file via telephone, mail, internet, or facsimile.  (Id. ¶ 15.)  When Equifax receives a dispute, it makes an electronic record of the dispute, on or about the time it is received, in a computer system referred

to as "ACIS."  (Id. ¶ 26.)  The ACIS record will eventually show when and how the dispute was received, as well as the steps taken in the reinvestigation of the dispute and the date the results of the reinvestigation were sent to the consumer.  (Id. ¶¶ 27-28.)

Upon receipt of a dispute in which the consumer has provided sufficient identifying information such as name, address, and social security number, Equifax begins investigation by locating the consumer's file in its database  (Id. ¶ 16.)  If the consumer has not provided sufficient information to allow Equifax to locate the file, then Equifax proceeds by sending a letter to the consumer requesting additional information.  (Id. ¶ 17.)  If Equifax is able to locate the file, it reviews and considers any relevant information provided by the consumer pertaining to the nature of the dispute as well as reviewing the contents of the file.  If the consumer provides authentic, relevant, and otherwise appropriate documentation, and if the nature of the documentation is sufficient, Equifax will make any necessary updates to the consumer's credit file.  (Id. ¶¶ 18-19.)

If further investigation of the consumer's dispute is necessary, however, Equifax communicates with the data furnisher to advise it about the dispute, the receipt of any relevant information, and the consumer's account information as it currently appears.  (Id. ¶ 20.)  These communications between Equifax and the data furnisher are typically made through a process in which Equifax electronically transmits a form to the data furnisher called an Automated Consumer Dispute Verification ("ACDV").  (Id. ¶ 22.)  An ACDV is an automated communication from Equifax to the data furnisher.  Once the data furnisher receives the ACDV it performs its own investigation and sends the ACDV back to Equifax to verify, modify, or delete the contested information.  (Id. ¶¶ 23-24.)  Equifax makes any necessary updates to the credit file and sends the consumer a copy of the reinvestigation results, an updated disclosure,

and a copy of the consumer's rights under the FCRA. The consumer's rights under the FCRA include the right to add a consumer statement to the credit file if the consumer does not agree with the reinvestigation results. (Id. ¶ 25.

C. Six Disputed Items

Six disputed items provide the foundation for plaintiff's claims of inaccuracy in his credit report. In Schweitzer I, plaintiff obtained a judgment in his favor in the state magisterial court on claims of misrepresentation in his credit report.[11] In the instant action, plaintiff claims his credit report continues to be in error and asserts the following six items are inaccurately reported:

---

[11] It is unclear from the record whether there was a hearing before the state magisterial court or on what basis the judgment was entered. It appears that judgment was entered by default. In those circumstances res judicata would not be applied in favor of plaintiff. Actual litigation is required for application of res judicata.

e. *Issues not actually litigated.* A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

It is true that it is sometimes difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly.

. . . .

In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.

RESTATEMENT (SECOND) OF JUDGMENTS, § 27 cmt. e.

1) the $147,000 tax lien bearing lien number GD956532; 2) an AmeriCredit account beginning with 40166*; 3) a Duquesne Light Company account ending in *6349; 4) an EMC Mortgage account ending in *0231; 5) a First Premier account ending in *0301; and 6) a S&T Bank account ending in *9850. (Compl. ¶ 87.) Based upon the alleged inaccuracy of these six items and the alleged resultant harm suffered, plaintiff claims defendant committed five separate violations of the FCRA and is liable under a theory of negligently supplying information for the guidance of others, relying upon section 552 of the Restatement (Second) of Torts. (Id. ¶¶ 144-60).

1. Mr. Schweitzer's Efforts to Dispute the Six Items

Between October 21, 2005 and December 7, 2005, plaintiff contacted Equifax to dispute four of the six items involved in the present action, including disputes for the $147,000 tax lien, AmeriCredit account 40166*, EMC Mortgage account *0231 and First Premier account *0301. C.S.F. ¶¶ 77, 82, 86, 89, 99, 103, 108.) Equifax did not receive disputes for Duquesne Light Company account *6394 or for S&T Bank account *9850. (C.S.F. ¶¶ 96, 114.)

a. Tax Lien GD956532

On October 21, 2005, Equifax received a dispute letter regarding the $147,000 tax lien bearing number GD956532 (C.S.F. ¶ 77.) When plaintiff sent appropriate documentation showing the lien was released, defendant updated the report to reflect the receipt and sent plaintiff a copy of his updated credit file on November 18, 2005. (Id. ¶ 78, Def.'s Concise S.M.F., Ex. F, pt. 1 (Docket No. 91-6) at 18.)

b. AmeriCredit

On October 21, 2005, Equifax received the first of three dispute letters from plaintiff regarding AmeriCredit account 40166*. (C.S.F. ¶ 82.) Equifax reinvestigated these disputes by following its typical procedure of sending an ACDV to AmeriCredit, including a description of plaintiff's dispute and the current information on file, as well as advising AmeriCredit that plaintiff claimed the account was his daughter's account. (Id. ¶ 84; Def's Concise S.M.F., Ex. F, pt. 2 (Docket No. 91-7) at 1.) While plaintiff claimed that the account was for an automobile owned solely by his daughter, AmeriCredit's response in the reinvestigation showed that the account information was accurately reported. (Id. ¶¶ 83-85.) On November 28, 2005, Equifax received a second letter of dispute regarding the AmeriCredit account and on December 7, 2005, received a third letter of dispute regarding the account. (Id. ¶¶ 86, 89.) Equifax followed its reinvestigation procedure by sending an ACDV to AmeriCredit for each dispute. AmeriCredit verified that the account was accurately reported. (Id. ¶¶ 87, 90.) On December 2, 2005, Equifax sent plaintiff the results of the second reinvestigation and on December 23, 2005, sent the results of the third reinvestigation. (Id. ¶¶ 88, 91, Def's Concise S.M.F., Ex. F, pt. 2 at 8.)

Two AmeriCredit accounts were originally linked to plaintiff, including one related to his Lincoln Towncar and one related to his daughter's Pontiac. (Id. ¶ 92.) In March 2006, plaintiff sued AmeriCredit based on the two accounts linked to his credit file. (Compl., Ex. A (Docket No. 1-3 at 5.) In August 2006, plaintiff prevailed in that lawsuit and AmeriCredit notified Equifax to cease its reporting with respect to AmeriCredit as a creditor on two separate accounts. (Compl., Ex. A (Docket No. 1-3) at 5.) Plaintiff, however, could not recall whether AmeriCredit account 40166* is related to the Towncar or to the Pontiac. (C.S.F. ¶ 93.) Plaintiff believes the report of the account is wrong in either case. Plaintiff claims he paid for the Towncar in full, but

that it was falsely reported as being charged off when he filed for bankruptcy.  (Id. ¶ 94.)[12]
Plaintiff claims he never signed for the loan for his daughter's Pontiac and believes the
individual who financed both cars, Tom Peniveira, forged plaintiff's name on the documents
related to the Pontiac.  (Id. ¶ 95.)[13]

   c. <u>EMC Mortgage</u>

  On October 21, 2005, Equifax received the first of two disputes concerning the EMC
Mortgage account *0231.  (C.S.F. ¶ 99.)  On December 7, 2005, Equifax received the second
dispute letter concerning the account.  (Id. ¶ 103.)  In both letters, Mr. Schweitzer claimed the
mortgage was paid in full.  (Id. ¶¶ 100, 104.)  For both disputes, Equifax completed
reinvestigation by researching its files and reporting back to the plaintiff that the account was
currently and correctly being reported with a zero balance.  (Id. ¶ 101.)  On November 18, 2005,
Equifax sent plaintiff the results of the first reinvestigation, and on December 23, 2005, Equifax
sent plaintiff the results of the second reinvestigation.  (Id. ¶¶ 102, 106; Def's Concise S.M.F.,
Ex. F, pt. 2 at 8.)

   d. <u>First Premier</u>

  On October 21, 2005, Equifax received a dispute letter from plaintiff regarding the First
Premier account *0301, stating the account contained inaccurate information.  (C.S.F. ¶¶ 108-
09.)  Equifax followed reinvestigation procedure by sending an ACDV to First Premier,
providing a description of plaintiff's dispute and the current information reporting on the file, as
well as advising First Premier about plaintiff's claim of inaccurate information.  (Id. ¶ 110.)
According to First Premier's response, the account information was accurately reported, and

---

[12] No evidence was submitted to substantiate these assertions.
[13] No evidence was submitted to substantiate these assertions.

Equifax sent plaintiff a copy of his updated credit file reflecting this response on November 18, 2005.  (Id. ¶ 111; Def.'s Concise S.M.F., Ex. F, pt. 1 at 19.)  Plaintiff claims that the account was a deposit account instead of a true credit card, and that it appeared as being charged off when he filed for bankruptcy even though he had enough deposit money to pay the whole account.[14]  (Id. ¶¶ 112-13.)

D.    Mr. Schweitzer's Injury Based Upon the Alleged Inaccuracy of the Six Items

        Mr. Schweitzer claims injury based upon the inaccuracy of the six disputed items in his credit report resulting from events which occurred in February 2007.  (Compl. ¶ 81.)   On February 10, 2007, plaintiff and Mrs. Schweitzer applied for a mortgage loan from Corinthian Mortgage Corporation ("Corinthian").  (Compl. ¶ 81.)  Corinthian denied the Schweitzers' credit application on the basis of credit scores calculated from plaintiff's credit report by one of Equifax's subcontractors, Fair Isaac Corporation.  (Id. ¶ 82.)  On March 3, 2007, plaintiff requested a current copy of his credit report from Equifax, and was supplied with a copy dated March 21, 2007.  (Id. ¶¶ 84-85.)  Upon receipt of the March 21, 2007 credit report, plaintiff discovered the report continued to be, in his estimation, inaccurate and defective regarding the six disputed items.  (Id. ¶ 87.)[15]

E.    The Series of Credit Reports

        With respect to the six disputed items, plaintiff alleges that Equifax disseminated four credit reports to Mr. Schweitzer between November 2006 and October 2007.   (See Six-Disputed Items Table, Resp. to Mot. SJ 6.) (Docket No. 94).  The first was dated November 7, 2006, followed by reports dated November 27, 2006, March 21, 2007, and October 17, 2007.  (Resp.

_____
[14] No evidence was adduced to support this assertion.
[15] No evidence was adduced to support this assertion.

Mot. SJ, Ex. 1 (Docket No. 94-1.))  The credit report dated November 7, 2006, does not contain any of the six items which are the subject of this action.  The reports dated November 27, 2006 and March 21, 2007, however, show that all six disputed items were added back into Mr. Schweitzer's credit file.  (Id. at 6.)  The October 17, 2007 report contains some, but not all, of the six disputed items.  (Id.)

A copy of the November 27, 2006 report, with the six disputed items added back onto it, was provided to plaintiff before he filed the present lawsuit.  (C.S.F. ¶¶ 74-75.)  On November 30, 2006, Mr. Schweitzer sent an email to Equifax's counsel indicating he rejected the November 27, 2006 report.  (Compl., Ex. A, pt. A at 6 (Docket No. 1-3.))  In doing so, plaintiff did not follow the standard dispute procedure of sending a dispute directly to Equifax.  (C.S.F. ¶¶ 15-19.)

### III.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

The nonmoving party must adduce sufficient evidence within the record, and cannot rely upon conclusory or vague allegations or statements.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Evidence must be provided for each element of all individual claims, and the evidence must be such that a reasonable fact-finder could find in that party's favor at trial.  Anderson v.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A nonmoving party, must "'designate 'specific facts showing that there is a genuine issue for trial.'" *Orenge v. Veneman*, No. 04-297, 2006 WL 2711651, at *6 (W.D. Pa. Sept. 20, 2006) (quoting *Celotex*, 477 U.S. at 324).

A motion for summary judgment will be defeated when there is a genuine issue of material fact, but will not be defeated by mere existence of some disputed facts. *Anderson*, 477 U.S. at 248. To determine whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249. To decide the merits of a motion for summary judgment, the court may consider any evidence that would be admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *Pollack v. City of Newark*, 147 F. Supp. 35, 39 (D. N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

## IV. **Discussion**

A.    Arguments presented

Equifax asserts two arguments: 1) Mr. Schweitzer's present claims are barred by the doctrine of res judicata; and 2) Mr. Schweitzer cannot establish all the elements of the claims asserted. Mr. Schweitzer disputes these arguments. Because the second argument is dispositive, the court will only address that issue.

B.    Failure to Adduce Evidence of the Elements of the Claims

1.    FRCA Claims

a.    Statutory Framework

"'The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" Cortez v. Trans Union, LLC, Nos. 08-2465, 08-2466, 2010 WL 3190882, at *10 (3d Cir. Aug. 13, 2010) (quoting Guimond v. Trans Union Credit Info. Co. 45 F.3d 1329, 1333 (9th Cir. 1995)). In discussing the Congressional intent of the FCRA, the Court of Appeals for the Third Circuit in Cortez commented:

> Congress intended to promote efficiency in the nation's banking system and to protect consumer privacy. *TRW Inc. v. Andrews,* 534 U.S. 19, 24, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (citing 15 U.S.C. § 1681(a)). Congress addressed the latter concern by including provisions intended "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969). Congress also hoped to address a number of related problems, including "the inability at times of the consumer to know he is being damaged by an adverse credit report," the lack of "access to the information in [his] file," the "difficulty in correcting inaccurate information," and "getting [his] version of a legitimate dispute recorded in ... [his] credit file." *Id.* at 3 (1969). "These consumer oriented objectives support a liberal construction of the FCRA," and any interpretation of this remedial statute must reflect those objectives. *Guimond,* 45 F.3d at 1333.

Id.

Plaintiff alleges violations of five provisions of the FCRA.

i)    Count I – Failure to Follow Reasonable Procedures to Maintain Accuracy, 15 U.S.C. § 1681e(b).

15 U.S.C. § 1681e(b) provides in relevant part:

**(b) Accuracy of report**

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 .S.C. § 1681e(b).

> ii)  Count II – Failure to Reinvestigate at the Consumer's Request, 15 U.S.C. § 1681i(a).

15 U.S.C. § 1681i(a) provides in relevant part:

**(a) Reinvestigation of disputed information**

**(1) Reinvestigation required. -**

**(A)  In general**. - … [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, … of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file. . . .

\*\*\*

**(3) Determination that dispute is frivolous or irrelevant**. -

**(A)  In general.** – Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information.

15 U.S.C. § 1681i(a)(1)(A), (3)(A).

iii) <u>Count III – Failure to delete information found to be inaccurate, incomplete, or unverified</u>, 15 U.S.C. § 1681i(a)(5).[16]

15 U.S.C. § 1681i(a)(5) provides in relevant part:

**(a)(5) Treatment of inaccurate or unverifiable information. -**

**(B)  Requirements relating to reinsertion of previously delete material. –**

**(i)  Certification of accuracy of information. -** If any information is deleted from a consumer's file pursuant to subparagraph (A) [deletion or modification of information upon  finding that information is inaccurate or incomplete or cannot be verified], the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

**. . . .**

**(C)  Procedures to prevent reappearance. -** A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

15  U. S. C. § 1681i(a)(5)(B)(i), (C).

iv.) <u>Count IV – Failure to notify users of deletion of information from file</u>, 15 U.S.C § 1681i(d)

15 U.S.C. § 1681i(d) provides in relevant part:

**(d)  Notification of deletion of disputed information**

Following any deletion of information which is found to be inaccurate or whose accuracy can no longer be verified or any

---

[16]  As noted previously, plaintiff incorrectly cites § 1681i(c) as being the relevant section of the FCRA for count III.

notation as to disputed information, the consumer reporting agency shall, at the request of the consumer, furnish notification that the item has been deleted or the statement, codification or summary pursuant to subsection (b) or (c) of this section to any person specifically designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information.

15 U.S.C. § 1681i(d).

      v.)    <u>Count V – Failure to follow reasonable procedures to maintain accuracy</u>, 15 U.S.C. § 1681k

15 U.S.C. § 1681k provides in relevant part:

**(a) In general**

A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—

**(1)** at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

**(2)** maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1), (2).

      b.     <u>Count I</u>

To prevail on a § 1681e(b) claim, a plaintiff must show: "'(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'" <u>Cortez</u>, 2010 WL 3190882, at *11 (quoting <u>Philbin</u>, 101 F.3d at 957, 963). Mr. Schweitzer cannot establish a prima facie case with respect to count I because he failed to provide evidence that his credit reports actually contained inaccurate information. In order to make out a prima facie case of a violation of § 1681e(b) of the FCRA, a consumer "must present evidence tending to show that a consumer reporting agency prepared a report containing 'inaccurate' information." <u>Philbin</u>, 101 F.3d at 964 (quoting <u>Cahlin v. Gen. Motors Acceptance Corp.</u>, 936 F.2d 1151, 1156 (11th Cir. 1991)).

The plain wording of § 1681e(b) requires Equifax to follow reasonable procedures to ensure accuracy in credit reports it prepares. "'[C]ourts have generally assumed that burden falls on the plaintiff'" to show the consumer reporting agency did not follow reasonable procedures. <u>Id.</u> at 964 (quoting <u>Stewart v. Credit Bureau, Inc.</u>, 734 F.2d 47, 51 n.5 (D.C. Cir. 1984) (per curiam) (citing <u>Hauser v. Equifax, Inc.</u>, 602 F.2d 811, 814-15 (8th Cir. (Neb.) 1979); <u>Morris v. Credit Bureau of Cincinnati, Inc.</u>, 563 F.Supp. 962, 968 (D.C. Ohio 1983); <u>Alexander v. Moore & Assocs., Inc.</u>, 553 F.Supp. 948, 954 (D.C. Haw. 1982)). Therefore, "'a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report.'" <u>Id.</u> (quoting

Stewart, 734 F.2d at 51). The FCRA, however, "'does not make reporting agencies strictly liable for all inaccuracies.'" Id. at 964-65 (quoting Cahlin, 936 F.2d at 1156).

In Philbin, the court of appeals noted:

> *The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures*, which will be a jury question in the overwhelming majority of cases. Thus, prior to sending a [§ 1681e(b)] claim to the jury, a credit reporting agency can usually prevail *only if a court finds, as a matter of law, that a credit report was 'accurate.'' *

Id. at 965 (quoting Cahlin 936 F.2d at 1156)(emphasis added). In Philbin, the defendants did not dispute that at least one of two inconsistent credit reports contained inaccurate information and the inconsistencies related to the inaccurate information. The defendants argued that the plaintiff failed to show the inaccuracies caused his injuries. The court of appeals disagreed and held a jury could infer on those facts that the credit agency "did not follow reasonable procedures." Id. at 966. The instant case is unlike the situation in Philbin because Equifax contends the information it reported was accurate and it detailed the reasonableness of the procedures taken to verify the information, which plaintiff did not refute.

In Cortez, the Court of Appeals for the Third Circuit reviewed its holding in Philbin with respect to the determination of the reasonableness of a credit reporting agency's procedures. In that case, unlike here, it was uncontroverted that the challenged information in a credit report was inaccurate. The credit report incorrectly noted the plaintiff was on a list of individuals whose "assets are blocked and U.S. persons are generally prohibited from dealing with them." Cortez, 2010 WL 3190882, at *1. The court of appeals stated:

> [T]he reasonableness of a credit reporting agency's procedures is "normally a question for trial unless the reasonableness or

unreasonableness of the procedures is beyond question." *Sarver v. Experian Info. Solutions,* 390 F.3d 969, 971 (7th Cir. 2004). In *Philbin,* we listed three different approaches that various courts have taken in determining if a plaintiff has introduced sufficient evidence to reach the jury under § 1681e(b). Those approaches are: "that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures; that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." *Philbin,* 101 F.3d at 965. We did not have to decide upon any one approach in *Philbin* because the plaintiff had produced evidence sufficient to meet any of the three standards. *Id.* at 966. The same is true here.

Cortez, 2010 WL 3190882, at *13.

In the instant case, however, the same is not true. Mr. Schweitzer did not adduce evidence to show the reports were inaccurate or to controvert Equifax's evidence that it followed reasonable procedures to ensure the accuracy of the six disputed items. The only evidence in the record of inaccuracy and failure to follow reasonable procedures is that the disputed items were taken off the November 7, 2006 report and reinserted in the November 27, 2006 and subsequent reports. Unlike in Philbin and Cortez, there is nothing in the record here to support the claims of inaccuracy, other than plaintiff's undocumented conclusions to support his claims of inaccuracy regarding the disputed items. In this case, Equifax detailed the procedures it followed and plaintiff did not adduce evidence to the contrary.

The record reflects that Equifax reinserted the challenged items pursuant to § 1681i(a)(5)(B)(i) ("[T]he information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate"). Equifax followed its standard dispute procedure by contacting the specific data

furnishers. Equifax verified and updated plaintiff's information where necessary, and Mr. Schweitzer did not provide evidence to show the contrary. Because there is no evidence that the credit reports were inaccurate and the evidence of reasonableness of the procedures followed by Equifax was uncontroverted, a reasonable jury could not render a verdict in plaintiff's favor with respect to this claim. Summary judgment must be entered in favor of defendant with respect Mr. Schweitzer's claim that Equifax's failed to follow reasonable procedures to maintain accuracy.

      c.    <u>Count II</u>

With respect to count II, Mr. Schweitzer did not provide any evidence demonstrating that Equifax failed to reinvestigate at his request under § 1681i(a). Plaintiff claims he sent various requests to Equifax to perform reinvestigations. There is no evidence in the record that Equifax failed to perform these reinvestigations on request or that Equifax treated any of the requested disputes as frivolous. Equifax detailed each request it received and the way in which the company handled the requests according to its dispute policy. Equifax never received a dispute regarding the Duquesne Light account and the S&T bank account, and there is nothing in the record to show otherwise. With respect to the November 27, 2006 credit report, Mr. Schweitzer complained to Equifax's attorney instead of directly to the company. Under those circumstances, no reasonable jury could render a verdict in plaintiff's favor with respect to this claim. Summary judgment must be granted in favor of defendant with respect to plaintiff's claim that defendant failed to reinvestigate plaintiff's consumer requests.

      d.    <u>Count III</u>

With respect to count III, Mr. Schweitzer failed to adduce any evidence demonstrating that Equifax failed to delete information found to be inaccurate, incomplete, or unverifiable

under § 1681(a)(5)(C).[17]  As noted previously there was no evidence that the challenged

information was inaccurate.  Equifax followed standard procedures to verify Mr. Schweitzer's

credit information regarding the disputed items.  After Equifax verified the information and

made necessary corrections, it placed the items back onto Schweitzer's credit report, in

compliance with § 1681i(a)(5)(B)(i). ("[T]he information may not be reinserted in the file by the

consumer reporting agency unless the person who furnishes the information certifies that the

information is complete and accurate").  Under those circumstances, no reasonable jury could

render a verdict in plaintiff's favor with respect to this claim.  Summary judgment must be

entered in defendant's favor with respect to plaintiff's claim that defendant failed to delete

information found to be inaccurate, incomplete, or unverifiable.

     e.     <u>Count IV</u>

With respect to count IV, Mr. Schweitzer failed to adduce any evidence demonstrating

that Equifax failed to notify users of the deletion of information upon the request of the

consumer under § 1681i(d).  There is no evidence in the record of Equifax receiving any requests

from Mr. Schweitzer to have deletion notices sent to users.  Thus, Equifax's obligations under

the FCRA were never triggered under § 1681i(d).  Under those circumstances, no reasonable jury

could render a verdict in favor of plaintiff with respect to this claim.  Summary judgment must

be entered in defendant's favor with respect to plaintiff's claim that defendant failed to notify

users of the deletion of information upon request of plaintiff.

     f.     <u>Count V</u>

---

[17] As indicated above, plaintiff cites § 1681i(c) in relation to this count, but the statutory provision which is implicated in this count is § 1681i(a)(5)(C).

With respect to count V, Mr. Schweitzer failed to adduce any evidence demonstrating that Equifax failed to follow reasonable procedures to maintain accuracy in furnishing a consumer report for employment purposes under § 1681k. There is no evidence in the record demonstrating that Mr. Schweitzer ever requested Equifax to send a report for employment purposes. Thus, Equifax's obligations under the FCRA were never triggered under § 1681k. Under those circumstances, no reasonable jury could render a verdict in plaintiff's favor with respect to this claim. Summary judgment must be entered in defendant's favor with respect to plaintiff's claim that defendant failed to follow reasonable procedures to maintain accuracy in furnishing plaintiff's report for employment purposes.

2.      State Claim[18]

With respect to count VI, plaintiff alleges that Equifax negligently supplied information for the guidance of others. The Pennsylvania Supreme Court adopted Restatement (Second) Tort § 552 as the standard for that claim. See Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999); see also Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994). Restatement (Second) of Torts § 552 provides in relevant part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest,

---

[18] This court could decline to exercise supplemental jurisdiction over the state claim because all the federal claims are being dismissed. 28 U.S.C. § 1367(c)(3) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> . . . .
> (3) the district court has dismissed all claims over which it has original jurisdiction.

The court, however, will exercise jurisdiction over the state common law claim.

> supplies false information for the guidance of others in their
> business transactions, is subject to liability for pecuniary loss
> caused to them by their justifiable reliance upon the information, if
> he fails to exercise reasonable care or competence in obtaining or
> communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(1).

Under section 552 of the Restatement (Second) of Torts, liability is based upon "pecuniary loss" as a result of "justifiable reliance upon the information" provided. Id. Mr. Schweitzer cannot establish the essential elements of a prima facie case under section 552 of the Restatement (Second) of Torts, because there is no evidence of record that he was supplied information by Equifax for "guidance" in "business transactions." See Id. ("One who … supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.") Here, the entity which would have used the information in Mr. Schweitzer's credit reports for guidance in business transactions is Corinthian Mortgage or another creditor. RESTATEMENT (SECOND) TORTS § 552 cmt. h. ("The rule stated in this section subjects the negligent supplier of misinformation to liability only to those persons for whose benefit and guidance it is supplied.") There is no evidence that Mr. Schweitzer was using the information for guidance in business transactions.

Even if Mr. Schweitzer was using the information for guidance in business transactions, he would need to show the information contained in the reports was false. In the instant matter, plaintiff failed to provide evidence that there was false information in the relevant reports. There is no evidence in the record to show inaccuracy in the way the items were reported. Without evidence of inaccuracy, plaintiff cannot establish a claim under section 552. Under those

circumstances, no reasonable jury could render a verdict in plaintiff's favor with respect to this claim. Summary judgment must be entered in favor of defendant with respect to plaintiff's state law claim.

## V. <u>Conclusion</u>

For the reasons set forth above, Equifax's Motion will be **GRANTED** with respect to plaintiff's claims filed pursuant to federal law at counts I, II, III, IV, and V, and with respect to plaintiff's claim filed pursuant to state law at count VI. An appropriate order will be entered.


By the court,

Date: September 21, 2010                         <u>/s/JOY FLOWERS CONTI</u>
                                                 Joy Flowers Conti
                                                 United States District Judge